IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA

| | |
|---|---|
| MARY THOME and KIMBERLY USHER on behalf of themselves and all others similarly situated,<br><br>    Plaintiffs,<br><br>vs.<br><br>THE SAYER LAW GROUP, P.C.,<br><br>    Defendant. | Case No. 3:20-cv-03058-CJW-KEM<br><br><br>DEFENDANT'S BRIEF IN SUPPORT OF ITS FED. R. CIV. P. 12(b)(1) MOTION TO DISMISS THE AMENDED COMPLAINT |

Defendant The Sayer Law Group, P.C. submits the following Brief in Support of its

Fed. R. Civ. P. 12(b)(1) Motion to Dismiss the Amended Complaint:

**TABLE OF CONTENTS**

I.    Introduction ................................................................................................ 1

II.   Background ................................................................................................. 5

III.  Rule 12(b)(1) Standard ............................................................................. 9

IV.  Plaintiffs Lack Standing to Maintain Their Claims................................. 10

V.    The Putative Class Claims Must Be Dismissed ..................................... 19

VI.  Alternatively, Defendant Requests an Evidentiary Hearing Regarding Subject Matter Jurisdiction ................................................................................. 19

VII.  Conclusion .............................................................................................. 20

**I.    INTRODUCTION**

Section 1692g of the Fair Debt Collection Practices Act serves the statute's broader

purpose of "eliminat[ing] abusive debt collection practices" by providing consumers the right

to fair notice and a 30-day period to dispute the validity of a debt.[1] The statute ensures that a

---

[1] 15 U.S.C. § 1692(e); *Dunham v. Portfolio Recovery Assocs., LLC*, 663 F.3d 997, 1000–01 (8th Cir. 2011) (quoting *Richmond v. Higgins*, 435 F.3d 825, 828 (8th Cir. 2006)) ("Section 1692g 'requires debt collectors to notify debtors within five days of the initial communication with

debt collector's communications will not cause confusion to an unsophisticated borrower, leaving the borrower "uncertain as to her rights" and leading to a failure to assert those legal rights. *See, e.g., Ellis v. Solomon & Solomon, P.C.*, 591 F.3d 130, 135 (2d Cir. 2010) (citations omitted). The purpose is not to create a cause of action for an alleged "bare procedural violation." *See St. Louis Heart Ctr., Inc. v. Nomax, Inc.*, 899 F.3d 500, 504 (8th Cir. 2018) (quoting *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549, *as revised* (May 24, 2016)); *see also Bazile v. Fin. Sys. of Green Bay, Inc.*, 983 F.3d 274, 280 (7th Cir. 2020) (quoting *Robertson v. Allied Sols., LLC*, 902 F.3d 690, 694 (7th Cir. 2018)) ("The nonreceipt of information to which a plaintiff is entitled under a statute may amount to a concrete injury, but only if it impairs the plaintiff's 'ability to use [that information] for a substantive purpose that the statute envisioned.'").

To establish the requisite standing for a claim dependent on breach of section 1692g's validation requirements, Plaintiffs must establish "injury in fact" that is "fairly traceable" to the alleged violations of the statute. *See id.*; *see also Demarais v. Gurstel Chargo, P.A.*, 869 F.3d 685, 691 (8th Cir. 2017) ("The violation of the statute must cause a concrete injury."). Plaintiffs admit their debts were valid so they were not injured as a result of the alleged technical non-compliance with section 1692g's validation notice protections. *See* Dkt. 11, Amended Complaint, ¶¶ 9-13, 25-29. In the absence of injury, Plaintiffs' Complaint must be dismissed for lack of jurisdiction under Fed. R. Civ. P. 12(b)(1).

---

the debtor of the debtor's right to dispute the debt.'"); *Casillas v. Madison Ave. Assocs., Inc.*, 926 F.3d 329, 333 (7th Cir. 2019) ("Section 1692g serves this end by giving debtors a way to dispute or verify their supposed debts."); *Jackson v. Abendroth & Russell, P.C.*, 207 F. Supp. 3d 945, 954 (S.D. Iowa 2016) (citing S. Rep. No. 95-382, at 4 (1977), as reprinted in 1977 U.S.C.C.A.N. 1695, 1699)) (recognizing that "the '[v]alidation of debts' provision in section 1692g of the FDCPA 'will eliminate the recurring problem of debt collectors dunning the wrong person or attempting to collect debts which the consumer has already paid'"); *Johnson v. Wetsch Abbott Osborn Van Vliet PLC*, No. 3:19-CV-00006, 2019 WL 7666751, at *3 (S.D. Iowa Mar. 21, 2019).

*No Injury, No Confusion, No Claim*

Plaintiffs Mary Thome ("Thome") and Kimberly Usher ("Usher") admit they stopped making payments on promissory notes (secured by residential mortgages) and defaulted. *See* Dkt. 11, Amended Complaint ¶¶ 9-13, 25-29. After default, they received letters from The Sayer Law Group, P.C. ("Sayer"), sent on behalf of the note holders. *See id.*, Exhibit B and C. Plaintiffs allege that these letters violated their rights under the FDCPA because they allegedly did not provide clear notice regarding the time allotted to dispute the validity of the sum due or the effect of declining to timely do so. *See id.* ¶¶ 18-21; 34-37. Regardless whether Sayer's notices were obligatory, or the contents sufficient to comply,[2] Plaintiffs concede that their debts are valid, obviating any harm tied to a right the Plaintiffs never intended to assert.

Recognizing the absence of alleged injury following Sayer's January 28, 2021 Motion to Dismiss, Plaintiffs reformulated their claim in an Amended Complaint that now asserts that Sayer filed its foreclosure action prior to the end of the 30-day validation period and alleging that Plaintiffs "believed the 14 days controlled and [they] had lost [their] right[s] and the benefits of disputing the debt once the foreclosure action had been filed." *See* Amended Complaint ¶¶ 22-23; 38-39. Whereas their original Complaint failed to identify any injury

---

[2] Defendant assumes for the purposes of this Fed. R. Civ. P. 12(b)(1) motion, without conceding, that the security interests which were the subject of the letters were "debts" under the FDCPA. Sayer does not satisfy the legal definition of a "debt collector" for purposes of the FDCPA regardless of how it may have described itself in letters out of an abundance of caution. *See Obduskey v. McCarthy & Holthus LLP*, 139 S. Ct. 1029, 1038 (2019). Federal courts' understanding of the statutory definition of "debt collector" has evolved even since the Northern District of Iowa ruled that Sayer had "not demonstrated that it is not a debt collector under the FDCPA as a matter of law under *Obduskey*." *See Brown v. Wells Fargo Bank, N.A.*, No. C19-3041-LTS, 2020 WL 89694, at *6 (N.D. Iowa Jan. 7, 2020) (Strand, C.J.). The distinction is immaterial to this Rule 12(b)(1) motion to dismiss, so Defendant assumes for purposes of this motion only (without conceding) that it is a debt collector.

3

whatsoever, Plaintiffs' Amended Complaint alleges that they "believed [they] had lost [their] right[s] to delay the foreclosure proceeding" and suffered emotional injuries. *See id.* ¶¶ 24, 40. These new allegations have no plausible causal connection to the alleged statutory violations regarding a 30-day validity notice. A foreclosure petition may be lawfully filed during the validation period.[3] The Amended Complaint suffers from the same fatal flaw as the original Complaint. Plaintiffs never intended to contest the validity of their debts (i.e., they never intended to invoke section 1692g's validation right) due to their conceded default. *See* Amended Complaint ¶¶ 9-13, 25-29. The lack of any injury in fact remains. *See generally id.*

Moreover, as the public court record of the underlying foreclosure proceedings establishes, Plaintiffs were not uncertain of their rights and did not act to their detriment due to alleged confusion regarding their validation rights under section 1692g. Quite to the contrary, Plaintiffs, through retained counsel, acknowledged in their foreclosure pleadings that their debts were valid by admitting default on their notes and otherwise asserting rights available to them.[4] *See* Exhibits A and B, *Wells Fargo Bank v. Mary M. Thome*, Cerro Gordo County No. EQCV072068, Foreclosure Petition and Answer (Iowa Dist. Ct. March 6, 2020) ("*Thome*"); Exhibits E and F, *Amerihome Mortgage Co. v. Kimberly Kay Usher*, Floyd County No. EQCV031508, Foreclosure Petition and Answer (Iowa Dist. Ct. July 21, 2020) ("*Usher*"). The purposes of the Fair Debt Collection Practices Act are not in play in this case.

---

[3] *See Lansing v. Wilford, Geske & Cook, P.A.*, No. CIV. 13-1525 RHK, 2013 WL 5587956, at *3 n. 2 (D. Minn. Oct. 10, 2013) ("Importantly, it was not unlawful for Wilford to commence the foreclosure proceeding during the 30–day validation period.") (citing 15 U.S.C. § 1692g(b); *Bartlett v. Heibl,* 128 F.3d 497, 501 (7th Cir.1997)).

[4] This Court "may consider 'some materials that are part of the public record or do not contradict the complaint,' as well as materials that are 'necessarily embraced by the pleadings.'" *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999) (citations omitted). Regardless, Sayer alternatively lodges a factual challenge. *See infra* § VI.

## II.    BACKGROUND

Plaintiffs admit that they executed notes secured by mortgages on each of their residences. *See* Dkt. 11, Amended Complaint ¶¶ 9-11 (the "Thome note" and "Thome mortgage"), ¶¶ 25-26 (the "Usher note" and "Usher mortgage"). "Plaintiff Thome defaulted on the above-referenced Thome Note following a failure to make monthly payments required under the terms [of the] Thome note and Thome mortgage." *Id.* ¶ 13. "Plaintiff Kimberly Usher defaulted on the above-referenced Usher note following a failure to make monthly payments required under the terms of the . . . Usher note and Usher mortgage." *Id.* ¶ 29.

After their non-payment and default, Thome and Usher received letters from Sayer stating as follows in pertinent part:

> You must pay the accelerated balance **within 14 days** of the date of this letter or your property that is collateral for the Note may then be scheduled for foreclosure in accordance with the terms of the Mortgage and applicable state laws. If you have not cured the default by February 10, 2020,[5] additional amounts may become due and payable under your Note and Mortgage.
>
> The undersigned is a debt collector attempting to collect a debt, and any information will be used for that purpose. However, if you have had your debt discharged in bankruptcy and you did not reaffirm your loan in your bankruptcy case, Wells Fargo Home Mortgage[6] will only exercise its right as against the property is not attempting to assess or collect the debt from you personally. You are further advised that unless you notify the undersigned in writing within 30 days of your receipt of this notice that you dispute the validity of the amount owed to Wells Fargo Home Mortgage or any portion thereof, the debt will be assumed to be valid.

*See* Complaint Exhibit B (January 27, 2020 Letter); Complaint Exhibit C (January 29, 2020 Letter); *see also* Dkt. 11, Amended Complaint ¶¶ 15-21, 31-37 (alleging receipt of these letters).

The 14-day deadline from the first paragraph quoted above, regarding foreclosure, is attributable to Iowa Code:

---

[5] Exhibit C, sent two days later, identifies the applicable date of February 12, 2020.
[6] Exhibit C identifies the applicable entity as Cenlar FSB.

5

> Prior to commencing a foreclosure on the accelerated balance of a mortgage loan and after termination of any applicable cure period, including but not limited to those provided in section 654.2A or 654.2D, ***a creditor shall give the borrower a fourteen-day demand for payment of the accelerated balance*** to qualify for an award of attorney fees under section 625.25 on the accelerated balance.

Iowa Code § 654.4B(1) (emphasis added).

The 30-day deadline from the second paragraph quoted above, regarding validity, is attributable to the FDCPA[7]:

> Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing--
>
> (1) the amount of the debt;
>
> (2) the name of the creditor to whom the debt is owed;
>
> **(3) *a statement that unless the consumer, within thirty days after receipt of the notice, disputes the <u>validity</u> of the debt, or any portion thereof, the debt will be assumed to be <u>valid</u> by the debt collector;***
>
> (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and
>
> (5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

15 U.S.C. § 1692g(a) (emphasis added).

Plaintiffs allege the letters they received from Sayer were "confusing and misleading to an unsophisticated consumer." Dkt. 11, Amended Complaint ¶¶ 21, 37. They allege that the letters "failed to identify the entities or persons who may assume the alleged debt 'to be

---

[7] *See supra* n. 2 (Defendant assumes—without conceding—that the FDCPA governs for purposes of this motion only).

6

valid.'" *Id.* ¶¶ 18, 34 (emphasis added); *see also id.* ¶¶ 19, 35 (alleging the Letters did not inform Plaintiffs "that the alleged debt may only be 'assumed to be valid *by the debt collector.*'"). Additionally, they allege that "[t]he 30-day dispute period given in the Dispute & Validation Notice referenced in [each Letter] directly contradicts the previous remark that required Plaintiff[s] . . . to pay the full accelerated balance within fourteen (14) days." *Id.* ¶¶ 20, 36. Plaintiffs' Amended Complaint does not challenge the validity of their debts. *See generally id.*

Plaintiffs allege that a putative class of individuals received similar letters, in which the 14-day deadline allegedly "overshadows and contradicts"[8] the 30-day deadline to dispute validity and did not contain the verbatim text of 15 U.S.C. § 1692g(a)(3):

> 44. Language in letters similar to Exhibits B and C sent to the Plaintiffs and each member of the purported class by Defendant Sayer overshadows and contradicts the Plaintiffs' 30-day validation rights by demanding that that the Plaintiffs <u>must</u> pay the accelerated balance within 14 days from the date of the letter.

> 45. The language stated in the Dispute & Validation Notice in Exhibits B and C herein fails to recite the language required by 15 U.S.C. § 1692g(a)(3) and therefore creates a false, deceptive, or misleading representation to collect or attempt to collect any debt while further overshadowing Plaintiffs' rights prescribed by 15 U.S.C. § 1692g.

Amended Complaint, Dkt. 11 ¶¶ 44-45.

Based on the foregoing allegations, Defendants moved to dismiss Plaintiffs' Complaint pursuant to Fed. R. Civ. P. 12(b)(1) on January 28, 2021 for lack of any concrete and particularized injury to confer standing. In lieu of resisting the motion, Plaintiffs filed an Amended Complaint on February 11, 2021 that now seeks, unsuccessfully, to transform an alleged technical violation into an injury in fact. Plaintiffs allege that, as a result of Sayer's

---

[8] *See* 15 U.S.C. § 1692g(b) ("Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor.").

petition for foreclosure on behalf of the note holders during the 30-day validation period, Plaintiffs were "confused about [their] rights," and "believed the 14 days controlled and that [they] had lost [their] right and the benefits of disputing the debt once the foreclosure action had been filed." *Id.* ¶¶ 23, 39.  No so.

In those underlying proceedings last year, Sayer's February 11, 2020 and February 17, 2020 Foreclosure Petitions against Thome and Usher claimed in pertinent part:

> 9. The Defendant-Borrower(s) defaulted on the Note by failing to make payments according to the Note's terms.
>
> 10. By reason of the Defendant-Borrower(s) default, Plaintiff has accelerated the balance due, making the whole of the Note due and payable forthwith, and is exercising its right to enforce payment of the entire Note by foreclosing the Mortgage given to secure payment.
>
> 11. The unpaid balance due on the Note after allowing all credits due to the Defendant-Borrower(s) is the principal balance of $44,847.08,[9] plus interest as provided in the Note and as may have been subsequently adjusted thereafter.

*See* Exhibits A, *Thome*, Foreclosure Petition; Exhibit E, *Usher*, Foreclosure Petition.[10]

In answering the Foreclosure Petitions, Thome and Usher admitted both the validity and their default on the Notes. *See* Exhibit B, *Thome*, Answer (admitting ¶ 9); Exhibit F, *Usher*, Answer (same). Thome claimed lack of information as to the principal balance due (manifesting no uncertainty as to her right to still do so). *See* Exhibit B, *Thome*, Answer to Petition ¶ 11. Usher admitted that the principal balance stated in her foreclosure petition was due. Exhibit F, *Usher*, Answer to Petition ¶ 11. Both filed a demand for delay of sale. *See* Exhibit C, *Thome*, Demand for Delay of Sale; Exhibit G, *Usher*, Written Demand for Three

---

[9] Usher's Petition pled her principal balance of $101,316.20.

[10] With the Foreclosure Petitions, Plaintiffs were served notice that "[t]he fact that a foreclosure petition may be or has been filed against you does not necessarily mean that you will lose your house. It is NOT too late." Exhibit A at 31, *Thome*, Exhibit H to the Foreclosure Petition); Exhibit E at 34, *Usher*, Exhibit H to the Foreclosure Petition Exhibit.

Month Delay. Both asserted potentially successful defenses to foreclosure. Thome reinstated her mortgage pursuant to a federal regulation. *See* Exhibit B, *Thome*, Answer at pp. 1-2. Usher worked out a loan modification. *See* Exhibit F, *Usher*, Answer at p. 1. Sayer dismissed both Foreclosure Petitions. *See* Exhibit D, *Thome*, Dismissal Without Prejudice; Exhibit H, *Usher*, Dismissal Without Prejudice.

In sum, no injury in fact exists as a result of a validation notice when the debt is admittedly valid, and no confusion exists when debtors retain counsel and assert each and every right available to them.

## III.    RULE 12(b)(1) STANDARD

A Fed. R. Civ. P. 12(b)(1) motion for lack of subject matter jurisdiction is proper where a plaintiff lacks standing. *See Faibisch v. Univ. of Minnesota*, 304 F.3d 797, 801 (8th Cir. 2002). "The party seeking to invoke federal jurisdiction . . . carries the burden [of establishing jurisdiction], which may not be shifted to another party." *Newcombe v. United States*, 933 F.3d 915, 917 (8th Cir. 2019) (quoting *Jones v. United States*, 727 F.3d 844, 846 (8th Cir. 2013)).

"Motions under 12(b)(1) may assert either a 'facial' or 'factual' attack on jurisdiction." *Moss v. United States*, 895 F.3d 1091, 1097 (8th Cir. 2018). In a facial challenge, "the court restricts itself to the face of the pleadings, and the non-moving party receives the same protections as it would defending against a motion brought under Rule 12(b)(6)." *Osborn v. United States*, 918 F.2d 724, 729 n. 6 (8th Cir. 1990) (internal citations omitted). "In a factual attack, the court considers matters outside the pleadings, and the non-moving party does not have the benefit of 12(b)(6) safeguards." *Id.*

Plaintiffs' Amended Complaint fails to allege factual content demonstrating concrete and particularized injury caused by the alleged statutory violations and should be dismissed

as facially deficient. As addressed in section VI, *infra*, Sayer alternatively requests an evidentiary hearing regarding the absence of subject matter jurisdiction.

## IV.    PLAINTIFFS LACK STANDING TO MAINTAIN THEIR CLAIMS

### A.    Jurisdiction Requires Article III Standing.

"Article III of the Constitution confines the judicial power of federal courts to deciding actual 'Cases' or 'Controversies.'" *Hollingsworth v. Perry*, 570 U.S. 693, 704 (2013) (citing U.S. Const. art. III, § 2, cl. 1). Plaintiffs must demonstrate standing by proving they have "suffered a concrete and particularized injury that is fairly traceable to the challenged conduct, and is likely to be redressed by a favorable judicial decision." *Id.* (citing *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–561 (1992)); *see also Hughes v. City of Cedar Rapids, Iowa*, 840 F.3d 987, 992 (8th Cir. 2016) (citing *Lujan*, 504 U.S. at 560) (requiring "1) an injury in fact, 2) a sufficient causal connection between the injury and the conduct complained of, and 3) a likelihood that the injury will be redressed by a favorable decision").

### 1.    Concrete Injury is Necessary for Standing

"To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo*, 136 S. Ct. at 1548 (quoting *Lujan,* 504 U.S. at 560) (internal quotation marks omitted). "A 'concrete' injury must be '*de facto*'; that is, it must actually exist," whether tangible or intangible in form. *Spokeo*, 136 S. Ct. at 1548-49. "A statutory violation can establish injury in fact when it creates 'the risk of real harm,' but a 'bare procedural violation' is insufficient*." St. Louis Heart Ctr., Inc. v. Nomax, Inc.*, 899 F.3d 500, 504 (8th Cir. 2018) (quoting *Spokeo*, 136 S. Ct. at 1549). In *Nomax*, the putative class action plaintiff received faxes which allegedly omitted "legally mandated disclosures in its

opt-out notice—for example, failing to specify a fax number or domestic telephone number to which a recipient should send opt-out requests." *Nomax*, 899 F.3d at 504. "Whatever technical deficiencies might have appeared in the opt-out notices," the plaintiff "had the means and opportunity to opt out from receiving future facsimiles, but simply declined to do so." *Id.* "Any technical violation in the opt-out notices thus did not cause actual harm or create a risk of real harm," so the plaintiff "lacked Article III standing." *Id.* at 504-505.

Hypothetical harm from a technical violation of a statute, like that in *Nomax*, will not confer standing. *See Braitberg v. Charter Commc'ns, Inc.*, 836 F.3d 925, 930 (8th Cir. 2016) (holding plaintiff had no standing over claim for wrongful retention of personal information in bare procedural violation of Cable Communications Policy Act); *Auer v. Trans Union, LLC*, 902 F.3d 873, 878 (8th Cir. 2018) ("even assuming that there were technical violations" of the Fair Credit Reporting Act, plaintiff "has not established that she suffered a concrete injury to her privacy interests"). By contrast, a risk of real harm may result from other types of alleged statutory violations—such as distress from an attempt to collect a debt not owed in violation of the FDCPA. *See Demarais*, 869 F.3d at 692. This is similar to "traditionally recognized harms," like "being subjected to baseless legal claims" (e.g., malicious prosecution). *See id.*

### 2. Particularized Injury is Necessary for Standing

"For an injury to be 'particularized,' it 'must affect the plaintiff in a personal and individual way.'" *Spokeo*, 136 S. Ct. 1548 (quoting *Lujan,* 504 U.S. at 560 n. 1). For instance, all but one plaintiff whose credit and debit card information was stolen in a cyberattack could not establish standing in their claims because they could not prove that their own card information had been misused, or that a substantial risk of misuse existed. *See In re SuperValu,*

11

*Inc.*, 870 F.3d 763, 765-767, 769-772 (8th Cir. 2017). Only the plaintiff who had been a victim of fraudulent charge had a particularized injury sufficient for standing. *See id.* at 772.

Similarly, the Seventh, Eleventh, and D.C. Circuit Courts of Appeal analyze the risk of harm from statutory violations relative to the plaintiff's *own* concrete interests, as opposed to risk to consumers at large. *See Casillas v. Madison Ave. Assocs., Inc.*, 926 F.3d 329, 334, 336 (7th Cir. 2019) ("Any risk of harm was entirely counterfactual: she was not at any risk of losing her statutory rights because there was no prospect that she would have tried to exercise them."); *Trichell v. Midland Credit Mgmt., Inc.*, 964 F.3d 990, 1002 (11th Cir. 2020) ("[A] statutory violation that poses a risk of concrete harm to consumers in general, but not to the individual plaintiff, cannot fairly be described as causing a particularized injury to the plaintiff."); *Frank v. Autovest, LLC*, 961 F.3d 1185, 1190 (D.C. Cir. 2020).[11]

### 3.     A Causal Connection is Necessary for Standing

"[T]here must be a causal connection between the injury and the conduct complained of—the injury has to be "fairly ... trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party not before the court." *Lujan*, 504 U.S. at 560–61 (1992) (quoting *Simon v. Eastern Ky. Welfare Rights Organization*, 426 U.S. 26, 41–42 (1976). Where the conduct complained of is a statutory violation, "[t]o establish causation a plaintiff must show that its injury is 'fairly traceable' to a challenged statutory

---

[11] The Second and Sixth Circuit Courts of Appeal look to the risk to consumers broadly. *See Trichell v. Midland Credit Mgmt., Inc.*, 964 F.3d 990, 1002 (11th Cir. 2020). *Trichell* rejects this approach as inconsistent with particularization: "a statutory violation that poses a risk of concrete harm to consumers in general, but not to the individual plaintiff, cannot fairly be described as causing a particularized injury to the plaintiff." *Trichell*, 964 F.3d at 1002. The approach in the Second and Sixth Circuit Court of Appeals defies the principles which underlie standing: "Congress cannot authorize private plaintiffs to enforce *public* rights in their own names, absent some showing that the plaintiff has suffered a concrete harm particular to him." *Spokeo*, 136 S. Ct. at 1553 (Thomas, J., concurring).

Case 3:20-cv-03058-CJW-KEM   Document 13-1   Filed 02/25/21   Page 12 of 21

provision." *Advantage Media, L.L.C. v. City of Eden Prairie*, 456 F.3d 793, 801 (8th Cir. 2006); *see also Demarais*, 869 F.3d at 691 ("The violation of the statute must cause a concrete injury.").

For instance, the plaintiff in *Advantage Media* argued that municipal restrictions and procedural requirements for approval of billboards violated the First Amendment, but the Eighth Circuit observed that they "were not factors in the denial of [plaintiff's] own permit applications" so the plaintiff could not show causation necessary for standing. *See Advantage Media*, 456 F.3d at 801. By contrast, in *Demarais*, the plaintiff was injured from attempts to "collect debts not owed," and "Congress created a statutory right to be free from attempts to collect debts not owed" under the FDCPA provisions at issue. *See Demarais*, 869 F.3d at 692.

**B. Plaintiffs Do Not Tie Their Alleged Procedural Concerns with Sayer's Section 1692g Compliance to Any Concrete and Particularized Injury.**

**1. Plaintiff Knew Their Debts Were Valid So They Were Not Injured as a Result of Alleged Technical Non-Compliance.**

Plaintiffs allege no concrete and particularized "risk of real harm" from the notice they received under section 1692g of the FDCPA because any confusion they had as to the time allotted to dispute the validity of a debt ("thirty days"), the effect of the decision not to do so ("the debt will be assumed to be valid by the debt collector"), or the impact that filing a foreclosure action had on their ability to dispute the debt (none) was of no consequence to Plaintiffs personally because their debt is admittedly valid, obviating harm tied to a right Plaintiffs never intended to assert. *See Nomax*, 899 F.3d at 504 (quoting *Spokeo*, 136 S. Ct. at 1549) (requiring "the risk of real harm" as opposed to a "bare procedural violation"). Plaintiffs do not allege their debts were invalid or that they were somehow prevented from curing their default. *See generally* Dkt. 11, Amended Complaint; *see also, e.g., Brunett v. Convergent Outsourcing, Inc.*, 982 F.3d 1067, 1068 (7th Cir. 2020), *reh'g denied* (Jan. 11, 2021) ("Although

13

Brunett asserted that she was confused by the letter's language, she did not tie that confusion to an injury."). On the contrary, Plaintiffs acknowledge that they stopped paying the notes for their properties and defaulted. *See* Dkt. 11, Amended Complaint ¶¶ 9-13, 25-29. Plaintiffs experienced no concrete and particularized injury as a consequence of any "bare procedural violation" in section 1692g validation notices because "[a]ny risk of harm was entirely counterfactual: [they] [were] not at any risk of losing [their] statutory rights because there was no prospect that [they] would have tried to exercise them" due to the validity of their debts. *See Nomax*, 899 F.3d at 504; *Casillas*, 926 F.3d at 334.

The new injuries Plaintiffs allege, which were absent from their original Complaint, seize on a flawed causal theory. *See* Amended Complaint ¶¶ 24, 40 (alleging Plaintiffs believed they lost their right to delay foreclosure, feared for the loss of their homes, and suffered different degrees of anxiety). To establish standing for an alleged statutory violation, the injury must be "fairly traceable" to the "challenged statutory provision." *See Advantage Media*, 456 F.3d at 801; *Demarais*, 869 F.3d at 691 ("The violation of the statute must cause a concrete injury."). Filing the foreclosure action, alone, was not a statutory violation capable of causing injury because Sayer may lawfully file a foreclosure petition on behalf of note holders to enforce valid debts during the 30-day validation period. *See Lansing v. Wilford, Geske & Cook, P.A.*, No. CIV. 13-1525 RHK, 2013 WL 5587956, at *3 n. 2 (D. Minn. Oct. 10, 2013) ("Importantly, it was not unlawful for Wilford to commence the foreclosure proceeding during the 30–day validation period.") (citing 15 U.S.C. § 1692g(b); *Bartlett v. Heibl,* 128 F.3d 497, 501 (7th Cir. 1997)). Alleged confusion surrounding the effects of foreclosure on their ability to seek section 1692g validation has no causal connection to the alleged injuries because Plaintiffs admit facts demonstrating no intent to dispute the validity of their debt—

14

they admit they stopped making payments on valid promissory notes (secured by residential mortgages) and defaulted. *See* Dkt. 11, Amended Complaint ¶¶ 9-13, 25-29.

Federal district courts in Iowa have dismissed claims for lack of standing in circumstances virtually identical to those in Plaintiffs' Complaint. In *Jackson v. Abendroth & Russell, P.C.*, the plaintiff, Patrick Jackson, brought putative class claims for violation of section 1692g of the FDCPA. *See Jackson v. Abendroth & Russell, P.C.*, 207 F. Supp. 3d 945, 960 (S.D. Iowa 2016). The Court held that there was no risk of harm from the notice violations asserted because Jackson had no grounds to challenge the validity of the debt:

> Jackson is correct in his understanding "that the risk of real harm [can] satisfy the requirement of concreteness." But Jackson's alleged statutory violations did not create the risk of real harm because, as indicated above, ***Jackson did not intend and had no grounds to dispute or challenge the validity of his debt.*** If a consumer contends the alleged debt owed is incorrect, or merely wishes to verify the debt, then a deficient disclosure of their FDCPA rights could create a risk of real harm because a consumer could inadvertently forfeit their right to validate the debt. However, ***because Jackson never intended to dispute or validate his debt, [defendant Abendroth & Russell, P.C.]'s alleged failure to disclose Jackson's FDCPA rights in the letter did not carry the risk of real harm.***

*Id.* at 954 (internal citations omitted) (quoting *Spokeo*, 136 S. Ct. at 1549) (emphasis added). Further, the Court recognized that, while sections 1692g(a) and 1692g(b) are procedural rights capable of resulting in actionable harm, non-compliance does not result in injury "on its own":

> [T]he Court finds a violation of FDCPA sections 1692g(a) and (b) does not, by itself, constitute an intangible harm that satisfies the injury-in-fact requirement.

*Jackson*, 207 F. Supp. 3d at 960.

Similarly, in *Johnson v. Wetsch Abbott Osborn Van Vliet PLC*, No. 3:19-CV-00006, 2019 WL 7666751, at *4 (S.D. Iowa Mar. 21, 2019), the Court ruled that a plaintiff claiming a violation of section 1692g(b) had no standing. The plaintiff alleged that she received a notice

15

letter stating that she had 30 days from the *date* of the letter to cure default, and that this overshadowed the portion of the letter stating that she had thirty days from *receipt* of the letter to validate the debt. *Id.* No. 3:19-CV-00006, 2019 WL 7666751, at *3. While the Court could theorize harms that the FDCPA's notice provisions were intended to protect (e.g., if they "lead to the failure to dispute debts not properly owed"), plaintiff made "no allegations whatsoever about her personal interactions with the letter," let alone claiming any harm. *See id.* No. 3:19-CV-00006, 2019 WL 7666751, at *3-*4. "Nor does the violation, consisting of two slightly competing timelines, alone create the risk of real harm." *Id.*, No. 3:19-CV-00006, 2019 WL 7666751, at *4. The risk was "like the risks from *Braitberg* or *Nomax*, where no harm materialized from a procedural violation, and that violation itself does little to increase the risk of harm." *Id.*, No. 3:19-CV-00006, 2019 WL 7666751, at *4.

Even courts outside of the Eighth Circuit that disagree that "a violation of FDCPA sections 1692g(a) and (b) does not, by itself, constitute an intangible harm that satisfies the injury-in-fact requirement," *Jackson*, 207 F. Supp. 3d at 960—and by, extension, *Trichell*'s more recent observations regarding the need for particularization, *see supra* n. 11— still require more than a technical violation to find standing. For instance, one court distinguished incomplete or erroneous disclosures (which will not alone confer standing) from deceptive disclosures:

> In *Pozzuolo*, *Casillas*, and *Benali*, the manner in which the collection letter violated the FDCPA was key to the finding that the plaintiff did not have standing to sue. As these cases illustrate, where a collection letter violates the FDCPA in a manner that can be characterized as "incomplete" or "erroneous" rather than misleading or deceptive—that is, where the letter includes incomplete or inaccurate information but does not attempt to persuade or dissuade in a deceptive manner—receipt of the letter will not by itself constitute an "informational injury" sufficient to confer standing. This distinction is but one embodiment of the distinction between "procedural" and "substantive" statutory rights discussed at length.

16

*Cartmell v. Credit Control, LLC*, No. 5:19-CV-1626, 2020 WL 113829, at *11 (E.D. Pa. Jan. 10, 2020) (failure to inform that making any payment on debt could revive the statute of limitations conferred standing) (citing *Pozzuolo v. Portfolio Recovery Assocs., LLC*, 371 F. Supp. 3d 217, 224 (E.D. Pa. 2019)) ("[B]ecause he never intended to dispute the debt, the violation [failing to inform him that only written disputes are legally effective] did not harm or present a material risk of harm to Pozzuolo."); *Casillas*, 926 F.3d at 334; *Benali v. AFNI, Inc.*, No. CV 15-3605-BRM-DEA, 2017 WL 39558, at *7 (D.N.J. Jan. 4, 2017)). Here, the letters Plaintiffs received actually disclosed that they had 30 days to dispute their debt. *See* Amended Complaint, Exhibits B and C.

In sum, Plaintiffs cannot establish concrete and particularized injury caused by the alleged non-compliance with the validation provisions of section 1692g. Their circumstances are not materially different than the plaintiff in *Nomax* who was entitled to a legally mandated disclosure, but had no interest in using it. *See Nomax*, 899 F.3d at 504; *Bazile*, 983 F.3d at 280 (quoting *Robertson v. Allied Sols., LLC*, 902 F.3d 690, 694 (7th Cir. 2018)) ("The nonreceipt of information to which a plaintiff is entitled under a statute may amount to a concrete injury, *but only if it impairs the plaintiff's 'ability to use [that information] for a substantive purpose that the statute envisioned*.'") (emphasis added). Plaintiffs' claims must be dismissed for lack of standing pursuant to Fed. R. Civ. P. 12(b)(1).

### 2. Plaintiffs Were Not Confused About Their Rights—Instead They Asserted All of Their Legal Rights Through Counsel.

Even if Plaintiffs' Amended Complaint could overcome lack of injury and the missing causal link with section 1692g's validation notice requirements (it cannot), the court record in the underlying foreclosure proceedings nonetheless establishes Plaintiffs demonstrated no uncertainty as to their rights under section 1692g and did not suffer harm by acting to their

detriment as a result of any alleged confusion. The FDCPA provides that "[a]ny collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor." 15 U.S.C. § 1692g(b). For confusion to be actionable, it must result in some detrimental action. *See Brunett v. Convergent Outsourcing, Inc.*, 982 F.3d 1067, 1068 (7th Cir. Dec. 15, 2020), reh'g denied (Jan. 11, 2021) ("A debtor confused by a dunning letter may be injured if she acts, to her detriment, on that confusion—if, for example, the confusion leads her to pay something she does not owe, or to pay a debt with interest running at a low rate when the money could have been used to pay a debt with interest running at a higher rate. But the state of confusion is not itself an injury."); *Spuhler v. State Collection Serv., Inc.*, 983 F.3d 282, 286 (7th Cir. Dec. 15, 2020) ("This means that for a concrete injury to result from a dunning letter's exclusion of a statement about accruing interest, that exclusion must have detrimentally affected the debtors' handling of their debts. The record contains no evidence that the absence of a statement about interest had any effect on how the Spuhlers responded to the letters or managed their debts. The Spuhlers presented no evidence, for example, that they paid a different, lower-interest-rate debt thinking that the debts mentioned in the letter would not accrue interest at all. Nor did they present evidence that they took action to clarify any confusion over whether the debts were accruing interest.").

Plaintiffs, through foreclosure counsel, acknowledged in their foreclosure pleadings that their debts were valid (by admitting default on their notes) and asserted rights available to them. *See* Exhibit A, *Thome*, Foreclosure Petition ¶ 9; Exhibit B, *Thome*, Answer to Petition ¶ 9 (admitting Thome "defaulted on the Note by failing to make payments according to the Note's terms"); Exhibit E, *Usher*, Foreclosure Petition ¶ 9; Exhibit F, *Usher*, Answer to

18

Petition ¶ 9 (admitting Usher "defaulted on the Note by failing to make payments according to the Note's terms"). Thome and Usher answered allegations regarding the balances due on their notes with the benefit of legal counsel's advice, unequivocally demonstrating their understanding that the debts were valid and that they could exercise rights available to them to work out a solution with their lender. *See* Exhibit B, *Thome*, Answer to Petition ¶ 11; Exhibit F, *Usher*, Answer to Petition ¶ 11. Both filed a demand for delay of sale. *See* Exhibit C, *Thome*, Demand for Delay of Sale; Exhibit G, *Usher*, Written Demand for Three Month Delay. Thome reinstated her mortgage pursuant to a federal regulation, and Usher worked out a loan modification. Exhibit B, *Thome*, Answer at pp. 1-2; Exhibit F, *Usher*, Answer at p. 1. Plaintiffs did not act to their detriment as a result of any alleged deficiencies under section 1692g.

## V. THE PUTATIVE CLASS CLAIMS MUST BE DISMISSED

"The constitutional requirement of standing is equally applicable to class actions." *Avritt v. Reliastar Life Ins. Co.*, 615 F.3d 1023, 1034 (8th Cir. 2010). A plaintiff "is not a proper representative of the class where he himself lacks standing to pursue the claim." *Hall v. Lhaco, Inc.*, 140 F.3d 1190, 1196–97 (8th Cir. 1998). Because Thome and Usher's individual claims must be dismissed for lack of standing, they are not members of any putative class and could not represent one. *See Bishop v. Committee on Prof'l Ethics,* 686 F.2d 1278, 1289 (8th Cir. 1982). Without any named plaintiff with standing, a putative class action cannot proceed. *See In re SuperValu, Inc.*, 870 F.3d 763, 768 (8th Cir. 2017) ("A putative class action can proceed as long as one named plaintiff has standing."). The putative class claims must be dismissed.

## VI. ALTERNATIVELY, DEFENDANT REQUESTS AN EVIDENTIARY HEARING REGARDING SUBJECT MATTER JURISDICTION

The failure to plead any injury caused by the alleged statutory non-compliance is apparent on the face of Plaintiffs' Amended Complaint so it must be dismissed on the

pleadings, as detailed above. Alternatively, Sayer requests an evidentiary hearing to determine whether jurisdiction exists. On a factual attack on jurisdiction, a district court "may consider matters outside the pleadings," *Croyle by & through Croyle v. United States*, 908 F.3d 377, 380 (8th Cir. 2018), "and the non-moving party does not have the benefit of 12(b)(6) safeguards." *Osborn v. United States*, 918 F.2d 724, 729 n. 6 (8th Cir. 1990). There is no presumption that the allegations are true and the Court may "evaluat[e]" the "merits of the jurisdictional claims." *Iowa League of Cities v. EPA*, 711 F.3d 844, 861 (8th Cir. 2013) (citation omitted). The "proper course" for a defendant to raise a factual attack on subject matter jurisdiction is to "request an evidentiary hearing" at which witnesses may testify. *See Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir. 1993); *Osborn v. United States*, 918 F.2d 724, 730 (8th Cir. 1990).

## VII.    CONCLUSION

WHEREFORE, Defendant The Sayer Law Group, P.C. respectfully requests that this Court enter an Order dismissing Plaintiffs Mary Thome and Kimberly Usher's Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(1). Alternatively, Defendant Sayer respectfully requests that the Court schedule an evidentiary hearing regarding this Court's subject matter jurisdiction over Plaintiffs' claims.

SIMMONS PERRINE MOYER BERGMAN PLC

By: /s/ Kevin J. Visser
Kevin J. Visser AT0008101
Paul D. Gamez AT0002806
Nicholas Petersen AT0012570
115 Third Street SE, Suite 1200
Cedar Rapids, IA 52401-1266
Telephone: (319) 366-7641
Facsimile: (319) 366-1917
Email: kvisser@spmblaw.com
        pgamez@spmblaw.com
        npetersen@spmblaw.com
ATTORNEYS FOR DEFENDANT

20

## CERTIFICATE OF SERVICE

I hereby certify that on February 25, 2021, I filed the foregoing using the Court's CM/ECF system, which will send notification of said filing to all attorneys of record.

/s/Kevin J. Visser

21